**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**JENNIFER ANNE GRIMM**
**CHERKAOUI,**

                **Plaintiff,**

**v.**                                                               **Case No:   6:15-cv-20-Orl-GJK**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                **Defendant.**

___

## MEMORANDUM OF DECISION

Jennifer Anne Grimm Cherkaoui (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her multiple applications for a Supplemental Security Income ("SSI"). Doc. No. 1.[1] Claimant filed her original application for SSI on January 11, 2007, alleging a disability onset as of October 2, 2006. R. 159-61, 252. Claimant alleges disability primarily due to: diabetes; fatty liver disease; cervical and lumbar radiculopathy; edema; left foot bone spur; periodontal disease; eye problems; sciatica; anemia; fibromyalgia; lumbago; stenosis; obesity; bariatric bypass problems; sleep apnea; anxiety; hepatic hemangioma; asthma; hyperlipidemia; polycystic ovarian disease; irritable bowel syndrome; incontinence; anal fissure; Chron's disease; rectal bleeding; acid reflux; fatigue; palpitations; and migraines. R. 100, 102, 1132, 1181, 1261, 1270, 2389-90, 2406, 2436. Claimant was born on

___

[1] This is the third time Claimant has appealed the Commissioner's denial of her disability applications to this Court. *See Cherkaoui v. Comm'r of Soc. Sec.*, No. 6:11-cv-379-Orl-GJK, Doc. Nos. 1, 19-20 (M.D. Fla.) (reversing and remanding for further proceedings); *Cherkaoui v. Comm'r of Soc. Sec.*, No. 6:13-cv-601-TBS, Doc. Nos. 1, 16, 21-22 (M.D. Fla.) (granting Commissioner's opposed motion for remand and remanding case for a new hearing). *See also* Doc. No. 19 at 1-6 (joint memorandum discussing procedural history).

March 23, 1968. R. 159. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: (1) failing to apply the correct legal standards to the opinions of Claimant's primary treating physician, Dr. Tse Chung Lee, M.D, and to demonstrate good cause, supported by substantial evidence for giving them little weight; and (2) failing to apply the correct legal standards to the opinions of the non-examining physicians. Doc. No. 19 at 48-71. Claimant also argues that since Claimant has had 396 medical appointments from October 2, 2006 through August 21, 2014, she is precluded from performing any work for eight-hours a day, five days per week and, therefore, she is disabled. Doc. No. 19 at 36-38. For the reasons that follow, the Commissioner's final decision is **AFFIRMED**.

I.     **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II. STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. <u>ANALYSIS.</u>

#### A. Dr. Lee.

At the center of this dispute is the ALJ's handling of the opinion evidence from Claimant's primary treating pain specialist, Dr. Lee. Doc. No. 19 at 48-64. First, Claimant argues that the ALJ failed to apply the correct legal standards because the ALJ failed to specifically discuss certain identical opinions offered by Dr. Lee, which are contained within treatment notes on September 26, 2012 (R. 2065), October 17, 2012 (R. 2061), November 2, 2012 (R. 2057), November 9, 2012 (R. 2053), November 16, 2012 (R. 2048), and January 2, 2013 (R. 2958). Doc. No. 19 at 51-52. Second, Claimant argues that the ALJ's reasons for giving Dr. Lee's other opinions (R. 1036, 1369, 2192, 3292-93) little weight are not supported by substantial evidence. Doc. No. 19 at 52-55.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In cases like this one, involving the ALJ's handling of such medical opinions, "substantial-evidence review . . . involves some intricacy." *Gaskin v. Commissioner of Social Security*, 533 F. App'x. 929, 931 (11th Cir. Aug. 14, 2013) (unpublished).[2] In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement constitutes an opinion, which requires the the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2);

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

- 4 -

*Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

Absent good cause, the opinion of a treating physician must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). The Eleventh Circuit has held:

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

*Johnson v. Barnhart*, 138 F. App'x 266, 270 (11th Cir. 2005) (unpublished) (quoting *Phillips* v. *Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). Thus, good cause exists to give a treating physician's opinion less than substantial weight where the ALJ demonstrates in the decision that the physician's opinion is not bolstered by the evidence in the record, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's medical records. *Id*.

The medical record in this case is voluminous. R. 296-1048, 1492-2192, 2686-3441. Dr. Lee, one of Claimant's many physicians, treated Claimant for her lumbar and cervical conditions from June 12, 2009 through May 15, 2013. R. 869-70, 948-52, 1547-84, 1848-99, 2041-2123, 2932-59. Dr. Lee ultimately provided six (6) total opinions in this case, which are as follows:

- **On February 11, 2010**, Dr. Lee completed a check-box form indicating that Claimant: is unable to sit upright in a chair for four hours or more in an eight-hour workday, five

days a week; needs frequent (hourly) unscheduled breaks; has pain which prevents her from turning side to side; experiences bad days which would likely result in at least five absences from work each month; and is unable to perform any work eight hours per day five days per week on a reliable basis.  Dr. Lee checked a box indicating that based upon his review of the medical records, Claimant's self-reported history, and the severity of Claimant's impairments, the limitations described above have existed since January 11, 2007.  R. 1036.  The opinion contains no narrative, clinical findings, or any description of Claimant's diagnoses or impairments.  R. 1036.

- **On August 29, 2011**, Dr. Lee completed a Statement of Health Care Provider for the Florida Department of Revenue.  R. 1369.  The form simply states that Claimant is "totally and permanently disabled" and is not currently able to work.  R. 1369.

- **On September 26, 2012**, Dr. Lee completed a Medical Verification Form, which provides that Claimant: is diagnosed with cervical and low back pain; cannot work siting down or standing up; cannot work at all; cannot perform volunteer work; cannot attend school; is permanently disabled; and is required to attend physical therapy four weeks per year and counseling once per month.  R. 2192

- **On January 23, 2013**, Dr. Lee completed a second Medical Verification Form, which is identical to the September 26, 2012 Medical Verification Form.  R. 3293.

- **On September 25, 2013**, Dr. Lee completed a third Medical Verification Form, which is identical to the first and second forms, except that here, Dr. Lee opines that Claimant is not required to attend physical therapy or counseling services.  R. 3292.

- **September 26, 2012 – January 2, 2013 treatment note opinions:** On each of the above referenced dates, Claimant presented to Dr. Lee for series of epidural steroid

injections and/or "SI joint injections" to help alleviate her pain. R. 2045, 2048, 2050, 2053-54, 2061-62, 2955, 29588. In a section of the treatment notes entitled "Medical Necessity," Dr. Lee wrote:

> [C]laimant has suffered chronic disabling pain which has caused psychological, social and physical impairment. The patient has tried unsuccessfully to have this pain relieved using conservative treatment for pain management. An attempt to alleviate the pain with a less invasive treatment has not been successful. Radiological findings and my evaluations are consistent with the pre-op diagnosis supporting the procedure. It is medically necessary that the patient undergoes an interventional pain management procedure to ease the painful syndrome, improve psychological status, return to a more functional quality of life and if applicable return to work.

R. 2048, 2053, 2057, 2061, 2065, 2958. Thus, rather than a medical opinion about Claimant's ability to work, Dr. Lee's opinions within the September 26, 2012 – January 2, 2013 treatment notes (collectively, the "Medical Necessity Opinions") appear to be opinions about the medical necessity of providing Claimant with a series of epidural steroid injections.[3]

In the decision, the ALJ provides a chronological summary of the medical and administrative record from 2006 through 2014. R. 2202-2221. The ALJ states that she has carefully considered the entire record, notwithstanding the fact that each record or treatment note may not be cited or specifically discussed in the decision. R. 2202. With respect to Dr. Lee's treatment, the ALJ states the following:

> [A]t an initial evaluation with pain management physician Chung Lee, M.D., on June 12, 2009, the claimant denied any history of weakness in her legs. She also denied a history of trauma and

---

[3] Notably, on December 12, 2012, after Claimant completed the series of epidural steroid injections in her lumber spine, she reported to Dr. Lee that her "lower back is much better." R. 2041. Claimant then requested the same treatment in her cervical spine due to radiating neck pain. R. 2041. On January 2, 2013, Dr. Lee began providing a series of cervical epidural steroid injections. R. 2955, 2958. As of March 23, 2013, Claimant reported a 50% reduction in pain. R. 2946.

reported her symptoms began for no apparent reason. Her strength was 5/5 in her bilateral lower extremities. The claimant also denied radiating pain, but she did describe numbness and tingling in her left foot. Dr. Lee noted decreased sensation to light touch over her left thigh and left foot. The claimant's gait was normal and straight leg raises were negative. Dr. Lee recommended facet joint injections and continued Lyrica, methocarbamol, and Lidoderm patches for pain [citing R. 869-70]. In July of 2009, Dr. Lee performed epidural steroid injections in her lumbar spine [citing R. 948-52].

\* \* \*

In February of 2010, Dr. Lee completed a checklist form verifying the symptoms the claimant reported and whether her symptoms were consistent with objective findings on examination. He indicated the claimant's alleged need to recline throughout the day and inability to sit upright in a chair or be on her feet for four or more hours in an eight hour workday, the need for frequent unscheduled breaks, and bad days resulting in five absences per month were consistent with the medical signs he observed [citing R. 1036]

\* \* \*

Dr. Lee's progress notes from May 24, 2010 show that the claimant reported lower back pain that did not radiate. She denied leg weakness and paresthesia in her legs. The claimant's gait was normal, her strength was 5/5, and her reflexes were normal at 2/2. There was tenderness in the claimant's left flank, but examination of her hip revealed full range of motion. Dr. Lee performed a left gluteal trigger point injection. In July of 2010, the claimant presented for an additional injection for her left buttock pain; Dr. Lee added fibromyalgia/myofascial pain to her diagnoses at that time although there was no evidence of positive tender points or positive trigger points on examination. Dr. Lee explained that the claimant's left-sided back pain may be related to her SI joint pain. He recommended a left SI joint injection [citing R. 1849-99].

\* \* \*

In September of 2010, Dr. Lee performed repeat trigger point injections in her lower back [citing R. 1547-84]. . . . At follow-up with Dr. Lee on October 13, 2010, the claimant reported that the trigger point injections as well as the physical therapy helped her lower back pain immensely [citing R. 1849-99, 2041-2123].

\* \* \*

Records from Dr. Lee in February 2011 reveal that the claimant had excellent relief from her injections at the L5-S1 level. She denied muscle weakness, focal neurological symptoms, and paresthesias [citing R. 1849-99, 2041-2123].

* * *

The claimant returned to Dr. Lee on August 8, 2011. She reported a recurrence in her lower back and leg pain. The claimant requested epidural injections. On examination, the claimant's sensation was intact to light touch throughout. Her muscle strength was 5/5. The claimant's gait was also normal. Dr. Lee performed epidural steroid injections for L5-S1 [citing R. 1849-99, 2041-2123].

* * *

When the claimant resumed treatment with Dr. Lee on August 15, 2012, she complained of continued neck pain. The claimant's gait was normal. Her strength was 5/5 and her coordination was normal. Although there was tenderness to palpation in her cervical spine, the claimant's Spurling's test was again negative for radicular pain in her neck. The claimant had normal range of motion in her lumbar spine and straight leg raises were negative. Despite normal straight leg raises, Dr. Lee's diagnoses included radiculitis of the thoracic, lumbar, and lumbosacral spine [citing R. 1956-59].

The claimant followed up with Dr. Lee for additional injections. Progress notes beginning in September 20102 document an antalgic gait. Although the claimant had decreased range of motion and tenderness to palpation, straight leg raises were negative and there were no deficits in sensation [citing R. 2931-88]. On a medical verification form completed in September of 2012, Dr. Lee indicated that the claimant was unable to work at all, volunteer or attend school [citing R. 2192].

* * *

On December 12, 2012, the claimant reported her back pain was much better; however, she described neck pain radiating into both arms with numbness in both hands. On physical examination, Spurling's maneuver was positive on the right and left side. The Claimant had normal sensation on the right, but there was hyperesthesia on the left. There were no strength deficits. Dr. Lee refilled her prescriptions for Voltaren gel and oxycodone [citing R. 2931-88].

* * *

> A medical verification form completed by Dr. Lee in March of 2013 continued to indicate that the claimant was unable to work at all without any rationale as to the specifics of her overall limitations [citing R. 3293]. Interestingly, on April 24, 2013, the claimant reported to Dr. Lee that her lower back pain does not interfere with anything. On physical examination, the claimant had decreased Achilles reflexes on the left, but her motor strength was intact. Straight leg raises were positive on the left, but negative on the right. Dr. Lee's diagnoses included lumbago and spondylosis. He performed lumbar facet joint injections. At follow-up in May of 2013, the claimant continued to state her back pain does not interfere with anything. There are no treatment notes from Dr. Lee after this time [citing R. 2931-88, 2989-94].

R. 2208-17. Thus, the ALJ provides a good summary of Dr. Lee's treatment notes and opinions, although the ALJ does not specifically discuss Dr. Lee's Medical Necessity opinions.

At step-two, the ALJ found that Claimant has the following severe impairments: "morbid obesity, status post bariatric surgery; disorders of the cervical and lumbar spine; myalgias; diabetes mellitus controlled with medications; sleep apnea controlled on CPAP or biPAP therapy; asthma; irritable bowel syndrome, constipation type secondary to prolonged use of narcotic medications; Chron's disease; steatohepatitis and hemangiomas of the liver; migraine headaches; hyperlipidemia; and polycystic ovarian disease." R. 2199. Based on the ALJ's review of the entire medical record, the ALJ found that Claimant has the following residual functional capacity (the "RFC"):

> The [ALJ] finds that the claimant has the [RFC] to perform sedentary work . . . with the ability to change positions between standing and sitting on her own timeframe and perform the job from both a standing and seated position. She is limited to occasionally stooping, kneeling, crouching, crawling, and balancing. The claimant cannot climb ladders/ropes/scaffolds and should avoid exposure to concentrated temperature extremes, concentrated fumes, gases, poorly ventilated areas, and hazards. She is further limited to simple, routine tasks.

R. 2202. Thus, the ALJ found that Clamant retains the RFC for a reduced range of sedentary work. R. 2202.

In making the above-stated RFC finding, the ALJ gave little weight to Dr. Lee's opinions, stating:

> In reaching this conclusion, the [ALJ] gives little weight to Dr. Lee's opinions that the claimant is unable to work at all and that her alleged symptoms are supported by the findings he observed [citing R. 1036 (February 11, 2010 opinion); R. 2192 (September 26, 2012 opinion); R. 3292-93 (March 22, 2013 and September 25, 2013 opinions)]. <u>Dr. Lee's treatment notes . . . prior to his opinion in February of 2010 fail to document the claimant's alleged limitations and physical examinations are largely benign and do not support such restrictions.</u> <u>In the forms Dr. Lee completed in September of 2012 and March and September of 2013, there is little insight as to the medical basis for his opinions</u> and no suggestion that he has had the luxury of reviewing all of her medical records from her various treating sources as have the [non-examining physicians]. The physical examinations in Dr. Lee's progress notes fail to support the restrictive limitations he assessed. As noted previously, Dr. Lee included diagnoses of fibromyalgia and radicular pain without the corresponding physical findings, which reduces the overall credibility of his assessments. Physical examinations performed by other physicians throughout the record contain minimal abnormalities and are inconsistent with these limitation as well. Furthermore, the claimant frequently reported an improvement in her symptoms and functional limitations. In Dr. Lee's most recent records, the claimant stated that her lower back pain does not interfere with anything, a statement that is hard to misconstrue [citing R. 2931-88].

R. 2222 (emphasis added). Thus, the ALJ assigned little weight to Dr. Lee's February 11, 2010 opinion because his prior treatment notes "fail to document the claimant's alleged limitations and physical examinations are largely benign and do not support such restrictions." R. 2222. The ALJ assigned little weight to Dr. Lee's September 26, 2012, January 23, 2013, and September 25, 2013 medical verification opinions (the "Medical Verification Opinions"), in part, because "there is little insight as to the medical basis for his opinions." R. 2222. The ALJ goes on to state that Dr. Lee's treatment notes "fail to support the restrictive limitations he assessed," including some of Dr. Lee's most recent treatment notes, where Claimant indicated that her "lower back pain does

not interfere with anything." R. 2222. The ALJ does not discuss the Medical Necessity Opinions or the August 29, 2011 opinion for the Florida Department of Revenue.

### i. The Medical Necessity Opinions.

As set forth above, Claimant argues that the ALJ failed to apply the correct legal standards by failing to state with particularity the weight given to the Medical Necessity Opinions. Doc. No. 19 at 51-52. The Court respectfully disagrees. Pursuant to *Winschel*, 631 F.3d at 1178-79, a medical opinion is a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis; what the claimant can still do despite her impairments, and the claimant's physical and mental restrictions. The Medical Necessity Opinions simply provide a basis for the medical necessity of Claimant undergoing a series of epidural steroid injections in her lumbar and, later, cervical, spine. R. 2048, 2053, 2057, 2061, 2958. As such, they do not reflect judgments about the Claimant's prognosis, what she can still do despite her impairments, or any physical or mental restrictions she might have. Accordingly, the Court finds that the Medical Necessity Opinions do not constitute medical opinions under *Winschel* and, therefore, the ALJ did not err in failing to discuss or state with particularity the weight given to them.

### ii. Good Cause.

Claimant argues that the ALJ failed to demonstrate good cause, supported by substantial evidence for giving little weight to Dr. Lee's February 11, 2010 opinion and to the Medical Verification Opinions. Doc. No. 19 at 52-55. The Court disagrees.

With respect to the February 11, 2010 opinion, the ALJ stated that Dr. Lee's prior treatment notes fail to "document the claimant's alleged limitations and physical examinations are largely

benign and do not support such restrictions." R. 2222.[4] Thus, the ALJ gave little weight to Dr. Lee's February 11, 2010 opinion because it is not supported by his treatment records prior to that date. Earlier in the decision, the ALJ noted that Claimant began treating with Dr. Lee on June 12, 2009, and her physical examinations were largely benign with normal strength, gait, and negative straight leg tests. R. 869-70, 948-52, 2208; *see also supra* p. 8. In July of 2009, Dr. Lee provided an epidural steroid injection into Claimant's lumbar spine. *Id*. The record contains no other treatment notes from Dr. Lee around the time of his February 11, 2010 opinion. The Court finds the ALJ has demonstrated good cause, supported by substantial evidence for giving little weight to Dr. Lee's February 11, 2010 opinion because the restrictions contained therein are not supported by his treatment notes from June 12, 2009 through February 11, 2010.[5]

As to the Medical Verification Opinions (R. 2192, 3292-93), the ALJ gave them little weight because they contain "little insight as to the medical basis for his opinions." R. 2222.[6] Thus, the ALJ gave the Medical Verification Opinions little weight because they are conclusory. The ALJ's finding is supported by substantial evidence. The Medical Verification Opinions simply provide diagnoses of cervical and lumbar pain, then contain a statement that Claimant cannot work, volunteer or attend school. R. 2192, 3292-3293. Such statements are wholly conclusory.

Moreover, the regulations provide that certain opinions, even opinions from treating

---

[4] *See supra* pp. 5-6 (limitations contained in Dr. Lee's February 11, 2010 opinion); R. 1036.

[5] As the ALJ pointed out, Dr. Lee's treatment records after February 11, 2010 also provide good cause for giving the opinion little weight. R. 2222. For example, as the ALJ discussed (*see* R. 2217, 2222), on April 24, 2013 and May 15, 2013, Claimant reported to Dr. Lee that "[t]he low back pain does not interfere with anything." R. 2932, 2937. Such reports are inconsistent with the limitations contained in Dr. Lee's February 11, 2010 opinion (*see supra* p. 6). R. 2222 (ALJ noting that the Claimant's statement in most recent treatment records "is hard to misconstrue.").

[6] The ALJ also gave the Medical Verification Opinions little weight because there is "no suggestion that [Dr. Lee] has had the luxury of reviewing all of [claimant's] medical records from her various treating sources as have the [non-examining physicians]. R. 2222.

sources, do not constitute medical opinions. *See* 20 C.F.R. § 404.1527(d) (medical source opinions on some issues "are not medical opinions"). Section 404.1527(d)(1) provides that a statement by a medical source that a claimant is "disabled" or "unable to work" does not constitute a medical opinion. 20 C.F.R. § 404.1527(d)(1) (providing that the examples in (d)(1) "are not medical opinions"). This makes sense because a brief statement from any source that a claimant is disabled or unable to work without further articulation about the nature and severity of the impairments, symptoms, diagnosis, prognosis; what the claimant can still do and/or the claimant's limitations is wholly conclusory and does little to inform the reviewer about the claimant's condition. The Court finds that the Medical Verification Opinions, which simply opine that Claimant is unable to work, volunteer, or attend school do not constitute medical opinions under the regulations. *See* 20 C.F.R. § 404.1527(d)(1). Accordingly, the ALJ committed no error with respect to the Medical Verification Opinions.[7]

### B. The Non-Examining Physicians' Opinions.

Claimant argues that the ALJ erred by according significant weight to the opinions of the non-examining physicians. Doc. No. 19 at 64-65. As set forth above, the ALJ provided a thorough review of the entire medical and administrative record, including the opinions of the non-examining physicians. R. 2202-2222.[8] After conducting that review, the ALJ states the following with respect to the opinions of the non-examining physicians:

---

[7] The ALJ does not discuss Dr. Lee's August 29, 2011 opinion to the Florida Department of Revenue, which like the Medical Verification Opinions simply opines that Claimant is permanently disabled from all work. R. 1369. For the same reasons set forth above with respect to the Medical Verification Opinions, the Court finds Dr. Lee's August 29, 2011 opinion does not constitute a medical opinion that must be weighed pursuant to *Winschel*, 631 F.3d at 1178-79.

[8] There is no allegation that the ALJ mischaracterized or misstated any of the record evidence in her twenty (20) page summary of the evidence.

> Turning to the opinion evidence, the testifying medical experts Dr. Griffin and Dr. Alexander, as well as the Disability Determination Services physicians Dr. Goodpasture, Dr. Long, Dr. Gutman, and Dr. Stone all concluded that the claimant is not precluded from performing all work activity.  The [ALJ] accords the greatest weight to the opinions of Drs. Griffin and Alexander as independent medical experts who reviewed all of the evidence available to them at the time they provided their opinions and gave cogent rationale accompanied by citations to the medical evidence to support their conclusions.  <u>Their opinions are consistent with the claimant's conservative treatment for her pain complaints as well as her statements throughout the record regarding her activities of daily living and improvement with exercise and treatment modalities. Their opinions are also generally consistent with the opinions of the Disability Determination Services physicians who also reviewed all medical evidence</u>.  Thus, the [ALJ] accords significant weight to the Disability Determination Services physicians who reviewed the record as a whole and found that, although her [RFC] has been decreased due to her impairments, the claimant remains capable of performing activities within the [RFC] assessment herein.  Drs. Griffin and Alexander opined that the claimant is capable of performing a reduced range of light exertion work.  To accommodate limitations as a result of the claimant's morbid obesity and continued complaints of pain, the [ALJ] is resolving all doubts in her favor by reducing the [RFC] to sedentary exertional work with the ability to change between sitting and standing as well as including postural and environmental limitations.  A sedentary [RFC] is generally consistent with the claimant's testimony at the hearing in 2009 as well as her most recent testimony in August of 2014 that she remains capable of lifting a case of water, which weighs approximately 13.5 pounds.  The [ALJ] also finds the claimant's testimony that she experiences some limitations with memory and concentration due to side effects from her medications to be somewhat credible.  Accordingly, the [RFC] provides for simple, routine tasks to accommodate this.

R. 2222 (emphasis added).  Thus, for the reasons outlined above, the ALJ gave significant weight to the opinions of the non-examining physicians; however, the ALJ also gave Claimant the benefit of the doubt and ultimately assessed a more restrictive RFC to account for Claimant's subjective statements regarding pain and side effects from medications.  R. 2222.

As set forth above, the ALJ demonstrated good cause, supported by substantial evidence for giving little weight to Dr. Lee's treating physician opinions.  *See supra* pp. 13-14.  In such

circumstances, so long as the opinions of the non-examining physicians are consistent with the medical record and are well-supported, an ALJ does not commit reversible error simply by giving them significant weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 155, 1158, 1160 (11th Cir. 2004); *Jarret v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873-874 (11th Cir. 2011) (unpublished). The ALJ commits reversible error only when the ALJ relies upon the opinion of a non-examining physician, standing alone, to base a decision. *See Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

In this case, the ALJ provided a review of the medical record, Claimant's testimony, the non-examining physician's testimony, and the other opinion evidence. R. 2202-2222. The ALJ gave the opinions of the non-examining physicians significant weight because their opinions are consistent with the Claimant's treatment for her pain, some of Claimant's testimony, Claimant's activities of daily living, and Claimant's reported improvement with treatment and exercise. R. 2222.[9] Nevertheless, the ALJ did not adopt those opinions, which restricted Claimant to light work, but the ALJ assessed a more restrictive RFC to account for Claimant's continued complaints of pain and side effects from medications. R. 2222. As such, the ALJ did not base her decision solely on the opinions of the non-examining physicians, but rather on the entire record.[10] Accordingly, the Court finds that the ALJ applied the correct legal standards and the ALJ's decision to accord significant weight to the opinions of the non-examining physicians is supported by substantial evidence.

### C. Frequent Absenteeism.

Claimant argues that the ALJ's decision should be reversed and remanded for an award of

---

[9] The ALJ also noted that their opinions were generally consistent with each other. R. 2222.

[10] Claimant does not argue that the opinions of the non-examining physicians are inconsistent with the medical record, but only asserts that the ALJ erred by giving them significant weight. Doc. No. 19 at 64-65.

benefits because Claimant's frequent doctor's appointments establishes that she cannot work 8-hours a day, five days per week. Doc. No. 19 at 36-38. To be clear, Claimant does not allege that the ALJ made any specific error. Instead, Claimant asserts that she has had 396 medical appointments from October 2, 2006 through August 21, 2014, and, therefore, the Court should independently find that she is unable to work. *Id*. However, that evidence was before the ALJ, who found Claimant's subjective statements not entirely credible. R. 2203.[11] On appeal, Claimant has not challenged the ALJ's credibility determination. Doc. No. 19. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Accordingly, the Court declines Claimant's invitation to reweigh the evidence.

## IV.   CONCLUSION.

Based on the forgoing, it is **ORDERED that**:

1. The Commissioner's final decision is **AFFIRMED**;

2. The Clerk is directed to enter judgment in favor of the Commissioner and against the Claimant, and to close the case.

**DONE and ORDERED** in Orlando, Florida on February 5, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

---

[11] Claimant has not cited to any legal authority for the proposition that the Court may independently consider Claimant's alleged need to frequently seek treatment as a basis to render a new decision in this case.

Copies furnished to:
Counsel of Record

The Court Requests the Clerk
Mail or Deliver Copies to:

The Honorable K. Barlow
Office of Disability Adjudication and Review
SSA ODAR Hearing Office
Desoto Bldg, Suite 400
8880 Freedom Xing Trl
Jacksonville, FL 32256-1224